## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

**PAULA MATTHEWS,**

      **Plaintiff,**

                               **Civil Action 2:14-cv-429**

     **v.**                         **Judge Peter C. Economus**

                                 **Magistrate Judge Elizabeth P. Deavers**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## REPORT AND RECOMMENDATION

Plaintiff, Paula Matthews, brings this action *pro se* under 42 U.S.C. §§ 405(g) and 1383(c)(3) for review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability insurance. This matter is before the United States Magistrate Judge for a Report and Recommendation on Plaintiff's *pro se* Complaint (ECF No. 3), Plaintiff's Statement of Errors Response (ECF No. 13), the Commissioner's Memorandum in Opposition (ECF No. 14), and the administrative record (ECF No. 10). For the reasons that follow, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner's decision.

## I.    BACKGROUND

Plaintiff prospectively filed her application for benefits in June 2011 alleging that she has been disabled since June 30, 2010 due to hiatal hernia, gastroesophageal reflux disease ("GERD"), depression, sleep apnea, insomnia, migraines and bradycardia. (R. at 144.) Plaintiff's application was denied initially and upon reconsideration. Plaintiff sought a *de novo*

hearing before an administrative law judge.  Administrative Law Judge K. Michael Foley

("ALJ") held a hearing on December 19, 2012, at which Plaintiff, then represented by counsel,

appeared and testified.  (R. at 25-62.)  Dr. John R. Finch, Ph.D., a vocational expert, and Dr.

Darryl R. Cherdron, M.D., a medical expert, also appeared and testified at the hearing.  On

January 15, 2013, the ALJ issued a decision finding that Plaintiff was not disabled within the

meaning of the Social Security Act.  (R. at 9–20.)  On January 31, 2014, the Appeals Council

denied Plaintiff's request for review and adopted the ALJ's decision as the Commissioner's final

decision.  (R. at 1–4.)  Plaintiff then commenced the instant action, *pro se*.[1]

## II.    HEARING TESTIMONY

### A.    Plaintiff's Testimony

At the time of the hearing, Plaintiff was 40 years old, stood 5'7" and weighed 300

pounds.  She testified that she had recently been experiencing weight loss due to a loss of

appetite.  (R. at 29.)  She testified regarding her work experience in the healthcare industry

working with adult individuals who had developmental disabilities.  (R. at 30-33.)

Plaintiff testified that, among her impairments, reoccurring abdominal pain bothered her

the most.  She also indicated that her anxiety and depression, as well as, for the previous few

months, her low back pain bothered her too.  (R. at 33,)  She reviewed her medications and

testified that they made her drowsy. (R. at 37.)   Plaintiff identified her significant health

problems to include abdominal pain with nausea, depression and anxiety, posttraumatic stress

disorder, low back pain, sleep apnea, recurrent pneumonia, migraine headaches and GERD.  (*Id.*)

---

[1]The Undersigned will discuss the record evidence as necessary to address Plaintiff's
contentions of error within the Analysis Section.

When asked to describe a typical day, Plaintiff testified that she could maybe walk 10 steps before stopping because of excruciating pain.  (*Id*.)  She said that she starts to shake and she can feel pain in her abdomen and lower back shooting down her leg.  She indicated that she could only stand two minutes, max, before she has to sit down.  She indicated that she cannot bend at the waist, squat or use her arms and shoulders to push, pull or reach.  She also said that she could not climb a flight of stairs.  (R. at 38-39.)  Plaintiff, however, also indicated that she used the second story of her house.  (R. at 40.)  Plaintiff testified that the most she can lift is the weight of two loaves of bread.  (R. at 39.)  She indicated that she sleeps three to three-and-a half hours a night and suffers from night terrors and nightmares.

Plaintiff testified that she got up every morning between 4:30 and 5:30 a.m. to get her kids off to school.  (R. at 41.)  She represented that she did not cook, wash dishes, clean or do laundry.  (R. at 42.)  She indicated that she occasionally goes to the grocery store and watched television maybe twice a week.  Other than that, she denied any other daily activities.  (R. at 42-43.)

When examined by her attorney, Plaintiff indicated that she shakes from anxiety constantly and only left the house once a month.  (R. at 45.)  She testified that she has so much trouble getting out of bed and out of the house, that she has gone to doctor's appointments in her pajamas.  (R. at 46.)  Plaintiff said that a good day for her would be if she was not isolated in her room.  (R. at 48.)  She indicated that she had huge concentration problems and could not stay focused to read a book.  (*Id*.)  Plaintiff indicated that while she was in her room all day, she was just sitting there or napping.  (R. at 49.)

**B.     Medical Expert Testimony**

3

Dr. Cherdron testified that he had reviewed Plaintiff's disability applications and medical records.  He indicated that the record revealed impairments including multiple hernias and subsequent repairs, history of heart surgery as a child, arrhythmia, bradycardia and premature ventricular contractions, GERD, migraine headaches, obesity, obstructive sleep apnea, depression, anxiety disorder, diverticulosis and left knee osteoarthritis.  Dr. Cherdron testified that in his professional opinion, none of the documented impairments met or equaled the Social Security Listings.  (R. at 50.)

Based on his consideration of the medical records and all of her documented impairments, Dr. Cherdron provided his assessment of Plaintiff's residual functional capacity. He opined that Plaintiff could sit for a total of six hours but would be required to stand and stretch every hour, could stand and walk for four hours with a five minute break each hour.  Dr. Cherdron indicated that, to account for her hernias and arthritic knee, Plaintiff could occasionally lift and push 15 to 20 pounds and frequently lift and push 10 pounds.  (R. at 51.)  Plaintiff's bending and squatting, stooping and crouching would be limited to occasional to rare. According to Dr. Cherdron, Plaintiff could climb stairs occasionally, but could not climb ropes, ladders or scaffolds.  She should be precluded from working at unprotected heights and avoid hazardous machinery.  Otherwise, in Dr. Cherdron's view, Plaintiff did not have an impairment that would require limitations to account for temperature or humidity or conditions of dust, fumes and gases.  (R. at 53.)

When asked whether the medication Plaintiff was taking could affect her ability to concentrate, Dr. Cherdron testified that the medication could produce drowsiness, but that the record in this case did not document the existence of side effects.  (R. at 53.)  He indicated that

4

he had considered the effects of Plaintiff's abdominal pain but did not account for any low back pain because it was not document in the record.  (*Id*.)

**C.      Vocational Expert Testimony**

Noting the capabilities and limitations outlined by Dr. Cherdron, and assuming Plaintiff's age, education and past relevant work history, together with limitations of depression and physical conditions that would make it difficult for her to maintain attention for extended periods of time, the Vocational Expert ("VE") testified that Plaintiff could not return to her past work. He indicated, however, that an individual with the limitations Dr. Cherdron outlined would be able to perform sedentary, unskilled positions such as a work order clerk, assembler and bench inspector and that these jobs are available in large numbers nationally and in central Ohio.  Upon cross examination by Plaintiff's attorney, the VE agreed that if a person was off task for ten minutes for every hour, that would preclude the ability to work. (R. at 59.)

### III.    ADMINISTRATIVE DECISION

On January 15, 2013, the ALJ issued his decision.  (R. at 9–20.)  At step one of the

sequential evaluation process,[2] the ALJ found that Plaintiff had not engaged in substantially

gainful activity since her alleged onset date of June 30, 2010. (R. at 11.)  The ALJ found that

Plaintiff had the severe impairments of history of ventral hernias; bradycardia; repair of atrial

septal defect; osteoarthritis of the left knee; migraine headaches; obstructive sleep apnea obesity;

depression; anxiety; and post traumatic stress disorder.  (*Id.*)  He found that Plaintiff's GERD

and diverticulosis are non-severe impairments since they have no more than a minimal effect on

her capacity to perform work.  The ALJ determined that Plaintiff's allegation of low back pain

was not supported by the objective medical evidence in the record and was a non-medically

determinable impairment.  Even if he could accept her allegations, the ALJ concluded that there

is no evidence that the condition had lasted or could be expected to last for a continuous period

---

[2] Social Security Regulations require ALJs to resolve a disability claim through a five-step sequential evaluation of the evidence.  *See* 20 C.F.R. § 416.920(a)(4).  Although a dispositive finding at any step terminates the ALJ's review, *see Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007), if fully considered, the sequential review considers and answers five questions:

1.    Is the claimant engaged in substantial gainful activity?
2.    Does the claimant suffer from one or more severe impairments?
3.    Do the claimant's severe impairments, alone or in combination, meet or equal the criteria of an impairment set forth in the Commissioner's Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1?
4.    Considering the claimant's residual functional capacity, can the claimant perform his or her past relevant work?
5.    Considering the claimant's age, education, past work experience, and residual functional capacity, can the claimant perform other work available in the national economy?

*See* 20 C.F.R. § 416.920(a)(4); *see also Henley v. Astrue*, 573 F.3d 263, 264 (6th Cir. 2009); *Foster v. Halter*, 279 F.3d 348, 354 (6th Cir. 2001).

of at least 12 months, as required by the Social Security regulations.  He further found that

Plaintiff did not have an impairment or combination of impairments that met or medically

equaled one of the listed impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(R. at 12.)  At step four of the sequential process, the ALJ set forth Plaintiff's RFC as follows:

> [Plaintiff] has the residual functional capacity to perform sedentary work . . . except:
> lift and/or carry 15-20 pounds occasionally and 10 pounds frequently; sit 6 hours
> with a position change every hour in an 8 hour workday; stand/walk for 4 hours with
> a 5 minute break each hour in an 8 hour work day; occasional to less than occasional
> bending, occasional squatting, occasional to rare stooping and crouching; occasional
> climbing of stairs but no climbing of ladders, ropes, or scaffolds; no working at
> unprotected heights or around dangerous machinery; and due to claimant's mental
> impairments, she would have difficulty maintaining attention for extended periods.

(R. at 13.)  The ALJ found Plaintiff's statements concerning the intensity, persistence, and

limiting effects of her symptoms to be only partially credible.  The ALJ assigned "great weight"

opinions of the Medical Expert, Dr. Cherdron, finding his opinions to be "strongly supported by

the objective medical evidence. . . ." (R. at 14–15.)  Relying on the VE's testimony, the ALJ

concluded that Plaintiff can perform jobs that exist in significant numbers in the national

economy.  (R. at 16.)  He therefore concluded that Plaintiff was not disabled under the Social

Security Act.  (*Id.*)

## IV.    STANDARD OF REVIEW

When reviewing a case under the Social Security Act, the Court "must affirm the

Commissioner's decision if it 'is supported by substantial evidence and was made pursuant to

proper legal standards.'"  *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 651 (6th Cir. 2009)

(quoting *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)); *see also* 42 U.S.C. §

405(g) ("[t]he findings of the Commissioner of Social Security as to any fact, if supported by

substantial evidence, shall be conclusive . . . .").  Under this standard, "substantial evidence is

defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers*, 486 F.3d at 241 (quoting *Cutlip v. Sec'y of Health & Hum. Servs.*, 25 F.3d 284, 286 (6th Cir. 1994)).

Although the substantial evidence standard is deferential, it is not trivial. The Court must "'take into account whatever in the record fairly detracts from [the] weight'" of the Commissioner's decision. *TNS, Inc. v. NLRB*, 296 F.3d 384, 395 (6th Cir. 2002) (quoting *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 487 (1951)). Nevertheless, "if substantial evidence supports the ALJ's decision, this Court defers to that finding 'even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (quoting *Key v. Callahan*, 109 F.3d 270, 273 (6th Cir. 1997)). Finally, even if the ALJ's decision meets the substantial evidence standard, "'a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.'" *Rabbers*, 582 F.3d at 651 (quoting *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2007)).

## V.   ANALYSIS

With her Complaint, Plaintiff attached a copy of her original request for reconsideration to the Appeals Council which the Court considers together with her "Statement of Errors Response." Plaintiff appears to assert that the Commissioner should consider her new medical records and her current course of treatment. She includes the text from what appears to be a partial radiology report dated February 26, 2013 which indicates an impression of multilevel disc disease, osteophyte formation and facet disease and anterolisthesis of her lower back without

8

spondylolysis.  Plaintiff also indicates that she has now been diagnosed with type 2 diabetes, and that she needs assistance with her shots daily, reminders for medication and assistance with personal care.  (See Complaint, ECF No. 3; Statement of Errors Response, ECF No. 13.)  Plaintiff also indicates that she has a new certified nurse practitioner from Ohio State Psychiatric as well as a new mental health counselor who are treating her for her depression, anxiety and PTSD.  Plaintiff faults the ALJ for not having or gathering any records from them.

The essence of Plaintiff's argument is that the Commissioner her claim for benefits based on incomplete or inaccurate documentation provided by her prior psychologist and mental health counselor.  Plaintiff seems to suggest that her mental health providers misrepresented information she shared during her counseling sessions.  She maintains that the Commisioner did not take account all of pertinent information when deciding her case.  She provides somewhat of a rebuttal to each section of the ALJ's decision denying her application for benefits.  Moreover, Plaintiff contends that she was never "referred to, requested to, or asked to attend any appointments and see medical professionals through Social Security." (ECF No. 13).

In her Memorandum in Opposition, the Commissioner posits that substantial evidence supports the ALJ's non-disability finding.  The Commissioner also asserts that, contrary to Plaintiff's argument, the ALJ was not required to order a consultative examination and had an adequately developed record from which to base his decision.

**A.      Plaintiff's New Medical Records and Recent Treatment**

Neither Plaintiff's alleged recent medical treatment nor the summary of lower back x-rays she included to her briefing are grounds for remand.  Sentence six of 42 U.S.C. § 405(g) provides in relevant part as follows:

> The Court may, on motion of the Secretary made for good cause shown before he files his answer, remand the case to the Secretary for further action by the Secretary, and it may at any time order additional evidence to be taken before the Secretary, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42. U.S.C. § 405(g). "Sentence-six remands may be ordered in only two situations: where the Secretary requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Shalala v. Schaefer*, 509 U.S. 292, 297 n.2 (1993) (citations omitted). The requirements that the evidence be "new" and "material," and that "good cause" be shown for the failure to present the evidence to the ALJ have been defined by the United States Court of Appeals for the Sixth Circuit as follows:

> "For the purposes of a 42 U.S.C. § 405(g) remand, evidence is new only if it was 'not in existence or available to the claimant at the time of the administrative proceeding.' . . . Such evidence is 'material' only if there is 'a reasonable probability that the Secretary would have reached a different disposition of the disability claim if presented with the new evidence.' . . . A claimant shows 'good cause' by demonstrating a reasonable justification for the failure to acquire and present the evidence for inclusion in the hearing before the ALJ . . . . [T]he burden of showing that a remand is appropriate is on the claimant."

*Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 276 (6th Cir. 2010) (quoting *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001)).

In the instant case, Plaintiff included with her Complaint a summary of the results of an x-ray of her lumbar region and has indicated she has new medical providers and additional impairments. This information appears to be new. Nonetheless, the information is unverified and unauthenticated. While the Court has no reason to doubt Plaintiff's recitation of the results of the x-ray, a statement in a document is not the same as an actual medical record. Moreover, although Plaintiff failed to argue materiality, a review of the additional information she submits

reveals that she could not have shown a "reasonable probability" that the Secretary would have reached a different conclusion on the issue of disability if presented with the additional material. *See Ferguson*, 628 F.3d at 276.

The primary problem with the additional materials that the information post-dates the ALJ's decision by several months.  Plaintiff's alleged recent treatment and the evidence she refers to in her briefing post-date the relevant time period and thus are not probative of Plaintiff's condition during the time the ALJ was assessing whether she was entitled to disability benefits. *See Casey v. Sec'y of HHS*, 987 F.2d 1230, 1233 (6th Cir. 1993) ("The rest of the material contained in the additional evidence pertains to a time outside the scope of our inquiry.") Because the ALJ could not have considered these documents, they are not relevant for the purposes of this decision.  Moreover, evidence or a report dated after the ALJ's decision, standing alone, does not satisfy the good cause requirement.  Plaintiff, who was represented by counsel at the time of the administrative hearing, must also provide a valid reason for her failure to obtain the evidence before the hearing date.  Plaintiff has failed to do so here.  *See Oliver v. Sec'y of Health & Human Servs*., 804 F.2d 964, 966 (6th Cir.1986) (holding that claimant failed to establish that medical reports were material where additional reports were complied after the administrative decision denying the claim).

**B.    Credibility Assessment**

Plaintiff next appears to challenge the ALJ's credibility assessment.  In conjunction with this argument, Plaintiff specifically points out inaccuracies in the ALJ's assessment of the range of her daily activities of living.  The Undersigned finds that substantial evidence supports the ALJ's credibility assessment.

The Sixth Circuit has provided the following guidance in considering an ALJ's credibility assessment:

> Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. 20 C.F.R. § 416.929(a); *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir. 2001); *Felisky v. Bowen*, 35 F.3d 1027, 1038-39 (6th Cir. 1994). First, the ALJ will ask whether the there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. 20 C.F.R. § 416.929(a). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities. *Id.*

*Rogers*, 486 F.3d at 247.

"The ALJ's assessment of credibility is entitled to great weight and deference, since he [or she] had the opportunity to observe the witness's demeanor." *Infantado v. Astrue*, 263 F. App'x 469, 475 (6th Cir. 2008) (citing *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)); *Sullenger v. Comm'r of Soc. Sec.*, 255 F. App'x 988, 995 (6th Cir. 2007) (declining to disturb the ALJ's credibility determination, stating that: "[w]e will not try the case anew, resolve conflicts in the evidence, or decide questions of credibility" (citation omitted)). This deference extends to an ALJ's credibility determinations "with respect to [a claimant's] subjective complaints of pain." *Allen v. Comm'r of Soc. Sec.*, 561 F.3d 646, 652 (6th Cir. 2009) (quoting *Siterlet v. Sec'y of Health & Hum. Servs.*, 823 F.2d 918, 920 (6th Cir.1987)). Despite this deference, "an ALJ's assessment of a claimant's credibility must be supported by substantial evidence." *Walters*, 127 F.3d at 531. Furthermore, the ALJ's decision on credibility must be "based on a consideration of the entire record." *Rogers*, 486 F.3d at 247 (internal quotation omitted). An ALJ's explanation of his or her credibility decision "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave

12

to the individual's statements and the reasons for that weight."  *Id.* at 248; *see also Mason v. Comm'r of Soc. Sec. Admin.*, No. 1:06–CV–1566, 2012 WL 669930, at *10 (N.D. Ohio Feb. 29, 2012) ("While the ALJ's credibility findings 'must be sufficiently specific', *Rogers*, 486 F.3d at 248, the intent behind this standard is to ensure meaningful appellate review.").

"Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among the medical reports, claimant's testimony, and other evidence."  *Walters*, 127 F.3d at 531.  In addition, the Regulations list a variety of factors an ALJ must consider in evaluating the severity of symptoms, including a claimant's daily activities; the effectiveness of medication; and treatment other than medication.  20 C.F.R. § 404.1529(c)(3); SSR 96–7p, 1996 WL 374186 (July 2, 1996); *but see Ewing v. Astrue*, No. 1:10–cv–1792, 2011 WL 3843692, at *9 (N.D. Ohio Aug. 12, 2011) (suggesting that although an ALJ is required to consider such factors, he or she is not required to discuss every factor within the written decision) (Report and Recommendation later adopted).

In the instant case, Plaintiff stated during the hearing that abdominal and low back pain preclude her from being able to walk more than ten steps or stand for more than two minutes at a time, and that she could not lift a gallon of milk.  With respect to her mental impairments, Plaintiff maintained that she had an inability to focus or concentrate even to read a book.  The ALJ found that Plaintiff's extreme allegations are contradicted by the objective medical evidence, medical opinion evidence, high functioning activities of daily living, and repeated inconsistent statements material to the issue of disability.  (R. at 16.)

In assessing Plaintiff's credibility, the ALJ properly looked to her ability to perform daily activities.  *See* 20 C.F.R. § 404.1529(c)(3)(I).  Plaintiff, however, disputes all of the following

findings by the ALJ in assessing her credibility related to her ability to perform activities of daily living.  She contends the ALJ either mischaracterized the evidence or that her counselors mistakenly reported what she had said with respect to the following conclusions of the ALJ:

- Plaintiff is only mildly restricted in her activities of daily living.  The ALJ noted that her counseling notes indicate that she is enrolled in online college classes pursuing a career in psychology and maintains a high grade point average.  The ALJ also indicated that she "does most of the household chores."  (R. at 13.)

- Plaintiff reported to her therapist that "she is taking over her cousin's 'flip-flop' business although [Plaintiff] failed to report this information in any of her work history reports."  (R. at 13.)

- Plaintiff testified that she wakes up every morning at 5:30 a.m. in order to get her two minor children up and off to school.  (R. at 13.)

- Plaintiff reported to her therapist that she is involved in a social club with other women and goes out to nightclubs with her friends, and that she is active on a social networking site called "Meet Up."  (R. at 13.)

- As for her mental impairments, Plaintiff has experienced no episodes of decompensation.  (R. at 14.)

Plaintiff responds as follows:

- She attends college because she felt that it helped stimulate her mind, but just because she was doing online courses does not mean she is able to concentrate.  In reality, she says that some times cannot concentrate and leaves an assignment for later. (Complaint, at 9.) Plaintiff also indicates that she is not able to do any of the housework or cooking.

- As to her cousin's flip-flop business, Plaintiff represents that endeavor was never designed to be a business for her but was to be an arts and crafts project for her and her younger daughters.  (*Id*.)

- Plaintiff agreed that she gets up at 5:30 a.m. to make sure her children get off to school but indicates that she does not do anything for them in preparation because they are old enough to do everything on their own and that she goes to bed when they leave.  (*Id.*)

- Plaintiff does not go "kicking it up at the night clubs," and that the information was passed on incorrectly.  She indicates that her therapist suggested getting out more often and also suggested the site "Meet Up" to her.  (*Id.*)

- As far as the episodes of decompensation, Plaintiff indicates that "this is absolutely impossible," and that she can barely breathe when she gets to the door and has to take one of her anxiety pills to get out of the door.  (Complaint, at 10.)

The Undersigned's review of the record confirms the accuracy of most of the ALJ's determinations.  Although she maintained that she had an inability to focus and poor memory so as not to be able to read a book, Plaintiff maintained a 3.5 GPA in her courses.  With respect to housework, on April 5, 2012, Ms. Heather Stevens' case management note indicates that Plaintiff "reported that she has been cleaning the house . . . and is also taking over her cousin's flip-flop business."  (R. at 684.)  The record also reveals that Plaintiff reported that she has friends and that she is happy with the number of friends she has.  (R. at 436.)   She indicated that she is involved with the group Big Beautiful Women ("BBW"), and that she only drinks occasionally "when she goes out to the club with her friends from BBW."  (R. at 437.)  Plaintiff is correct, however, that she was merely educated by her mental health counselor, Ms. Stevens, about the online social networking site "Meet Up," to help establish a better support system.  (R. at 688.)

That being said, the ALJ relied on what was in the record and cannot be faulted if Plaintiff's counselors failed to accurately convey the facts.  In this regard, therefore, substantial evidence supports the ALJ's credibility assessment as it relates to his discussion of Plaintiff's ability to perform activities of daily living.

Plaintiff also challenges the ALJ's conclusion that she has not suffered repeated episodes of decompensation.  She claims that she has incapacitating anxiety and panic attacks.  Plaintiff appears to misunderstand the ALJ's determination.  "Decompensation" is a term of art in Social Security law.[3]  The record contains no documented evidence that indicates Plaintiff has experienced episodes of decompensation.  As to her claims regarding debilitating anxiety such that she cannot get out the door, the Court notes that the record does not support this claim.  Of the fourteen times Plaintiff failed to appear or cancelled counseling and medication management appointments in 2012, she never reported that her anxiety prohibited her from attending the sessions.  (*See, e.g.*, R. at 677, cancelling because of difficulty walking after falling down steps; R. at 680, cancelling due to car trouble.)

Even assuming the truth of each of Plaintiff's assertions and that the information in the record is inaccurate, the ALJ's credibility determination remains supported by substantial evidence such that his decision must be upheld.  *See Johnson v. Comm'r of Soc. Sec.*, 535 F. App'x 498, 507 (6th Cir. 2013) (citing *Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th

---

[3]Listing 12.00 regarding Mental Disorders defines episodes of decompensation as follows:

> Episodes of decompensation are exacerbations or temporary increases in symptoms or signs accompanied by a loss of adaptive functioning, as manifested by difficulties in performing activities of daily living, maintaining social relationships, or maintaining concentration, persistence, or pace.  Episodes of decompensation may be demonstrated by an exacerbation in symptoms or signs that would ordinarily require increased treatment or a less stressful situation (or a combination of the two).  Episodes of decompensation may be inferred from medical records showing significant alteration in medication; or documentation of the need for a more structured psychological support system (e.g., hospitalizations, placement in a halfway house, or a highly structured and directing household); or other relevant information in the record about the existence, severity, and duration of the episode.

Cir. 2012)) ("[E]ven if an ALJ's adverse credibility determination is based partially on invalid

reasons, harmless error analysis applies to the determination, and the ALJ's decision will be

upheld as long as substantial evidence remains to support it.").   In assessing Plaintiff's

credibility, the ALJ noted that Plaintiff's extreme allegations were inconsistent with the

objective medical evidence and the medical opinion evidence.  (R. at 16-17).  Substantial

evidence supports this finding.  By way of example, although Plaintiff alleged debilitating pain

due to hernias, her surgeon successfully repaired Plaintiff's hernia on September 15, 2011 with

laparoscopic surgery, a CT scan on April 24, 2012 was unremarkable except for a small cyst, and

the surgeon opined that the only functional limitation Plaintiff had with respect to her hernias

was a restriction of no lifting more than 25 pounds for a month after surgery.  (R. at 465-66,

604-05, 469).  Furthermore, Plaintiff's allegations of debilitating concentration and memory

deficits are inconsistent with mental status examinations.   Plaintiff's therapist and CNP have

generally found Plaintiff to be calm, cooperative, pleasant, alert and oriented with good eye

contact, and found Plaintiff to have linear and logical thought processes, organized and full

speech, and no difficulties with insight or judgment.  (R. at 674-721.)

The ALJ noted that Plaintiff's generally unpersuasive appearance and demeanor while

testifying at the hearing and Plaintiff's inconsistent statements also influenced his credibility

assessment.  (R. at 17.)   "In instances where the individual attends an administrative proceeding

conducted by the adjudicator, the adjudicator may also consider his or her own recorded

observations of the individual as part of the overall evaluation of the credibility of the

individual's statements." Social Security Ruling 96-7p, 1996 WL 374186, at *5.  Further, "[o]ne

strong indication of the credibility of an individual's statements is their consistency, both

internally and with other information in the case record." *Id.* The ALJ found that Plaintiff's description of the severity of her pain had been so extreme as to appear implausible. (R. at 17.) He noted, for example, Plaintiff's allegation that she was unable to walk more than ten steps or stand more than two minutes at a time due to pain conflicted with evidence. Although Plaintiff denied doing any household chores during her testimony, she did report to her therapist that she had been "cleaning the house." (R. at 684.)[4]

In sum, it is **RECOMMENDED** that the Court decline to disturb the ALJ's credibility assessment and **OVERRULE** Plaintiff's contention of error.

## C.      Duty to Develop Record

Plaintiff argues that she was never "referred to, requested to, or asked to attend any appointments and see medical professionals through Social Security." (Statement of Errors Response). To the extent Plaintiff means that the ALJ should have ordered a consultative examination to more fully develop the record, that argument fails. As a preliminary matter, Plaintiff's argument fails because she was represented by counsel at the hearing, but did not request a consultative examination at the hearing. *Hopkins v. Comm'r of Soc. Sec.*, 96 F. App'x 393, 395 (6th Cir. 2004) (As claimant's "conditions are well documented and [he] did not request additional testing at the administrative level, there was no reason for the ALJ to order additional testing."). The ALJ only has a heightened duty to develop the record in certain circumstances, namely when a claimant is without counsel, is not capable of presenting an effective case, and is unfamiliar with hearing procedures. *Duncan v. Sec'y of Health & Human*

---

[4]Again, Plaintiff dispute this contention but the record does show her counselor recorded that Plaintiff had reported she was cleaning her house.

*Servs*., 801 F.2d 847, 856 (6th Cir. 1986).  Here, Plaintiff was represented by counsel at the hearing and no special circumstances existed to heighten the ALJ's duty with respect to the record..

"An ALJ has discretion to determine whether further evidence, such as additional testing or expert testimony, is necessary."  *Foster,* 279 F.3d at 355 (citing 20 C.F.R. § 416.917).  "If your medical sources cannot or will not give us sufficient evidence about your impairment for us to determine whether you are disabled or blind, we *may* ask you to have one or more physical or mental examinations or tests." 20 C.F.R. § 416.917 (emphasis added).  Here, the ALJ had sufficient evidence on which to make a determination of Plaintiff's disability claim. Indeed, the ALJ called on the services of an impartial medical expert and a vocational expert.  The ALJ also had the benefit of the opinions of state agency reviewing physicians and psychologists and treating sources, medical records and treatment notes, and Plaintiff's testimony. Accordingly, the ALJ adequately developed the record and was under no duty to more fully develop it.

## VI.   CONCLUSION

In sum, from a review of the record as a whole, the Undersigned concludes that substantial evidence supports the ALJ's decision denying benefits.  Accordingly, it is **RECOMMENDED** that the Court **OVERRULE** Plaintiff's Statement of Errors and **AFFIRM** the Commissioner of Social Security's decision.

## VII.   PROCEDURE ON OBJECTIONS

If any party seeks review by the District Judge of this Report and Recommendation, that party may, within fourteen (14) days, file and serve on all parties objections to the Report and Recommendation, specifically designating this Report and Recommendation, and the part in

question, as well as the basis for objection. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).

Response to objections must be filed within fourteen (14) days after being served with a copy.

Fed. R. Civ. P. 72(b).

The parties are specifically advised that the failure to object to the Report and

Recommendation will result in a waiver of the right to *de novo* review by the District Judge and

waiver of the right to appeal the judgment of the District Court. *See, e.g.*, *Pfahler v. Nat'l Latex

Prod. Co.*, 517 F.3d 816, 829 (6th Cir. 2007) (holding that "failure to object to the magistrate

judge's recommendations constituted a waiver of [the defendant's] ability to appeal the district

court's ruling"); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005) (holding that

defendant waived appeal of district court's denial of pretrial motion by failing to timely object to

magistrate judge's report and recommendation). Even when timely objections are filed,

appellate review of issues not raised in those objections is waived. *Robert v. Tesson*, 507 F.3d

981, 994 (6th Cir. 2007) ("[A] general objection to a magistrate judge's report, which fails to

specify the issues of contention, does not suffice to preserve an issue for appeal . . . .") (citation

omitted)).

Date: July 30, 2015          /s/ *Elizabeth A. Preston Deavers*
                                         Elizabeth A. Preston Deavers
                                         United States Magistrate Judge

20